

FILED

NOV 29 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

BANNER LIFE INSURANCE COMPANY,
      Plaintiff,

v.                                                                          Civil Action No. 2:11cv198

JOHN W. BONNEY
as Administrator of
the ESTATE OF CLYDE B. PITCHFORD, JR., et al.
      Defendants.

## OPINION AND ORDER

This suit arises out of the Complaint for Interpleader filed by Plaintiff Banner Life Insurance Company ("Plaintiff") on May 31, 2011. This matter is presently before the Court upon the Motion to Dismiss the Crossclaims of Defendants Equity Trust Company fbo Howard Lewin, Equity Trust Company fbo Robert M. Aguinaga Roth IRA, and Equity Trust Company fbo Gary B. Kahn Roth IRA (collectively, "the Equity Trust Claimants") filed by Defendant John W. Bonney, as Administrator of the Estate of Clyde B. Pitchford, Jr. ("Defendant the Estate").[1] For the reasons stated herein, Defendant's Motion is hereby **DENIED** as to Counts I, II, and III, and **GRANTED** as to Count IV.

## I.    FACTUAL AND PROCEDURAL HISTORY

On November 16, 2005, Plaintiff issued a life insurance policy ("the Policy") to insure the life of Clyde B. Pitchford, Jr. ("Mr. Pitchford"). The Policy had a "face amount" of

---

[1] Following an Order entered by the Circuit Court of Southampton County disqualifying Attorney John Bonney as the Administrator of the Estate, this Court, by Order dated October 18, 2011, granted Mr. Bonney's Motion for Leave to Withdraw as Counsel. For the purposes of this Order, the Court reads the Partial Motion to Dismiss filed by Defendant John W. Bonney, as Administrator of the Estate of Clyde B. Pitchford as a Motion filed on behalf of the Estate. Thus, Mr. Bonney's withdrawal as Counsel has no effect on the disposition of this Motion.

$1,000,000, which Plaintiff promised to pay to the beneficiary or beneficiaries of the Policy upon Mr. Pitchford's death. (Pl.'s Am. Compl. Interpleader 14.)  In his insurance application, Mr. Pitchford named his sister, Gale Pitchford Wagner[2], as the primary beneficiary of the Policy, granting her one-hundred percent (100%) of the Policy proceeds. (Id. at 15.)  Mr. Pitchford named his father, Clyde B. Pitchford, Sr. as the contingent beneficiary, granting him one-hundred percent (100%) of the Policy proceeds in the event the primary beneficiary pre-deceased the insured. (Id.)

With respect to the insured's right to name beneficiaries, the Policy stated:

Beneficiary

Unless otherwise provided by written notice to us, the beneficiaries are named in the application.

Change in Beneficiary

During the insured's lifetime, the owner may change the beneficiary designation unless he or she has waived the right to do so.  No beneficiary change will take effect until a written notice is received at our administrative office.  Such changes will become effective on the date written notice is received by us. All changes will be subject to any payment made by us before notice was received.

(Id. at 14.)  On April 9, 2009, Denise Vaughan from Innovative Underwriters sent to Plaintiff via facsimile a document ("List of Beneficiaries") allegedly signed by Mr. Pitchford which purported to change the beneficiaries of the Policy. (Id. at 15.)  The List of Beneficiaries named, in addition to Gale Beasley in the amount of $100,000, twelve additional intended beneficiaries in amounts ranging from $10,000 to $327,025. (Id. at 15-16.)  In response, Plaintiff sent a letter to Mr. Pitchford advising that it could not process the beneficiary changes he submitted until he included percentage amounts for each beneficiary. (Id. at 16.)  Mr. Pitchford

---

[2] Gale Pitchford Wagner is hereafter referred to as Gale Beasley in light of other documents submitted to Plaintiff by Mr. Pitchford referring to his sister as "Gale Beasley" and in light of documents filed by "Gale Beasley" to this Court.

never resubmitted a beneficiary change form listing the percentage amounts. (Id.) However, on June 14, 2010, Plaintiff received via facsimile an additional beneficiary designation for Equity Trust Company in the amount of "$900,000 - .09 percent." (Id.) Plaintiff promptly sent a letter to Mr. Pitchford advising that in order to process his beneficiary change request, the percentages of all beneficiaries under the Policy must add up to 100%. Mr. Pitchford never submitted such a beneficiary change form. (Id.)

Mr. Pitchford died on January 26, 2011. Plaintiff received notice of Mr. Pitchford's death on January 31, 2011, and on February 16, 2011, Plaintiff began receiving letters from individuals and entities whom Mr. Pitchford had named in the "List of Beneficiaries" asserting claims against the Policy. (Id. at 17.) As the bases for these claims, these individuals each cited a Promissory Note and factoring contracts for various amounts allegedly entered into by Mr. Pitchford which purport to assign the principal amounts on the respective contracts to the respective claimants from the Policy proceeds. (Id. at 17-26.)

In order to resolve these claims and to determine the proper beneficiary or beneficiaries under the Policy, Plaintiff filed a Complaint for Interpleader, Amended as a matter of course on May 31, 2011, to request that this Court enter an Order demanding that Defendants interplead to resolve any dispute about the proper beneficiaries of the Policy. In its Amended Complaint, Plaintiff r requested that this Court allow Plaintiff to pay the proceeds of the Policy into the Court's registry to be disbursed by the Court upon resolution of this matter, and that it enjoin Defendants from commencing any action against Plaintiff with reference to the proceeds of the Policy. (Id. at 27.)

Several of the Defendants named in Plaintiff's Complaint for Interpleader filed Answers to the Complaint and staked claims to the interpleaded funds. In response to Plaintiff's Amended

Complaint for Interpleader, the Equity Trust Claimants filed a joint Answer and Crossclaim against Defendant the Estate and Defendant Gale Beasley ("Defendant Beasley"). The Crossclaim lists six separate counts. Count I alleges a state-law claim for fraud and civil conspiracy against the Estate and Gale Beasley. Count II alleges a state-law claim for negligent misrepresentation against the Estate. Count III alleges breach of contract against the Estate. Count IV alleges civil conspiracy and breach of fiduciary duty against John W. Bonney, as Administrator of the Estate, and Gale Beasley. Count V alleges fraudulent transfer against Gale Beasley. Finally, Count VI requests creation of a constructive trust against the interpleaded funds or, in the alternative, the equitable substitution of the Equity Trust Claimants as beneficiaries under the Policy. Notably, the Equity Trust Claimants' Crossclaim is nearly identical to that earlier filed by the Lewin Group Claimants, to which this Court entered an Order on October 21, 2011. Only Count IV materially differs from the Lewin Group Claimant's Crossclaim.

On October 18, 2011, Defendant the Estate filed a Motion to Dismiss Counts I, II, III, and IV of the Crossclaim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Because the Equity Trust Claimants' allegations mirror those of the Lewin Group Claimants, Defendant's Motion to Dismiss is substantially similar to that previously filed in response to the Lewin Group Claimants' Crossclaim, which this Court denied by Order dated October 21, 2011. The Equity Trust Claimants filed a response to Defendant's Motion to Dismiss on October 31, 2011.

## I.   ANALYSIS

### A. *Defendant's Partial Motion to Dismiss  Under Rule 12(b)(1)*

#### 1.  Standard of Review

A federal court sitting in diversity must apply the substantive law of the forum state, including its choice of law rules. Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941)). Procedural matters, however, are determined according to federal law. Erie R. Co. v. Tompkins, 304 U.S. 64, 91 (1938); Hottle v. Beech Aircraft Corp., 47 F.3d 106, 109 (4th Cir. 1995) ("a federal court is to apply state substantive law and federal procedural law in diversity cases"). Because the legal standard governing a motion to dismiss pursuant to Rule 12(b)(1) is a procedural matter, it is governed by federal law.

The burden of proving subject matter jurisdiction always lies with the plaintiff. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936).  This Court's subject matter jurisdiction over crossclaims is governed by Federal Rule of Civil Procedure 13(g), which states, in pertinent part, "A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action." Fed. R. Civ. P. 13(g).  For crossclaims to be proper, they must also either carry an independent basis for subject matter jurisdiction or must fall under the Court's supplemental jurisdiction. See 28 U.S.C. §§ 1331, 1332, 1367; Capital One v. Arabia, No. 5:10-cv-619-Oc-10KRS, 2011 WL 4346577, *2 (M.D. Fla. Sept. 16, 2011); Amco Constr. Co. v. Miss. State Bldg. Comm'n, 602 F.2d 730, 732-33 (5th Cir. 1979).

2. Discussion

    a. *The Equity Trust Claimants' Crossclaim Counts I, II, and III.*

This Court has subject matter jurisdiction over Plaintiff Banner Life Insurance Company's original Complaint for Interpleader based on the complete diversity of the parties under 28 U.S.C. § 1332. The Equity Trust Claimants assert that this Court also has diversity jurisdiction over their Crossclaim. (Equity Trust Claimants' Crossclaim ¶ 6.) To support this contention, they allege that Crossclaimant Equity Trust Company is an Ohio corporation with its principal place of business in Ohio, Crossclaimant Howard Lewin is domiciled in New Mexico, and Crossclaimants Roberto M. Aguinaga and Gary B. Kahn are domiciled in Florida, while Crossdefendants Gale Beasley and John W. Bonney are citizens and residents of Virginia. Moreover, the Claimants state that the amount in controversy is the $1 million in Policy proceeds. Because it is apparent from the face of the pleadings that there is complete diversity between the Equity Trust Claimants and the Crossdefendants, and because the amount in controversy exceeds $75,000, there is an independent basis for jurisdiction over the Claimants' Crossclaim under 28 U.S.C. § 1332.

Moreover, Counts I, II, and III of the Equity Trust Claimants' Crossclaim "arise[] out of the transaction or occurrence that is the subject matter of the original action," as required by Rule 13(g). Indeed, these Claims do not present a matter of first impression. Rather, they are virtually identical to those contained in the Lewin Group Claimants' Crossclaim against Defendants the Estate and Beasley, which we previously found to have arisen out of the same

transaction or occurrence as Plaintiff's initial Complaint for Interpleader.. <u>Banner Life Ins. Co.</u>
<u>v. Bonney</u>, No. 2:11cv198, 2011 WL 5027498, at *6 (E.D.Va. Oct. 21, 2011).

As we found with respect to the Lewin Group Claimants, if the Equity Trust Claimants
prevail on the claims contained in their Crossclaim, they may be entitled to collect under the
Policy.   Because the sole purpose of Plaintiff's Interpleader action is to determine how
appropriately to disburse Policy proceeds, the Equity Trust  Claimants' claims therefore have a
direct and substantial impact on the issue which lies at the heart of this suit.  Moreover, failing to
try all of the issues together in one action would undoubtedly and indefinitely prolong resolution
of this matter.  Thus, we find that concerns of "judicial economy, convenience, and fairness to
litigants" substantially outweigh any concern regarding potential jury confusion that may arise
from trying the claims found in Counts I, II, and III of the Crossclaim in one suit.

### b.  The Equity Trust Claimants' Crossclaim Count IV

Count IV of the Equity Trust Claimants' Crossclaim, which alleges breach of fiduciary
duty and civil conspiracy against Defendant John W. Bonney, as Administrator of the Estate, and
against Defendant Beasley, is the sole claim which this Court did not address in its October 21,
2011 Order.   Count IV is distinct from the other Counts of the Equity Trust Claimants'
Crossclaim in that it alleges claims against John W. Bonney acting in his fiduciary capacity as
Administrator of the Estate, and apparently stands separate from any actions taken by Mr.
Pitchford during his lifetime.  Specifically, Count IV alleges that Mr. Bonney violated his
fiduciary duty and committed civil conspiracy by: (i) agreeing to represent and so representing
Defendant Beasley, whose interests are adverse to those of the Equity Trust Claimants; (ii)
asserting positions on behalf of Defendant Beasley which are in conflict with his fiduciary

obligations as Administrator of the Estate; and (iii) conspiring with Defendant Beasley to be named the Administrator of the Estate, so that Mr. Bonney could ensure that the Estate did not assert a claim to the Policy proceeds.

Crucially, this claim is exclusive to actions that occurred after Mr. Pitchford's death. Plaintiff's original Complaint for Interpleader and all of the other crossclaims related to this suit previously addressed by this Court arise out of Mr. Pitchford's allegedly improper conduct with respect to his management of the Policy at issue. Count IV, by contrast, arises out of Mr. Bonney's alleged improper conduct. Moreover, Count IV pertains to conduct which occurred well after the events giving rise to the litigation. Indeed, the allegations listed in Count IV pertain to conduct which occurred not only after the death of Mr. Pitchford, but after the instigation of this litigation. Because Count IV is so attenuated from the original suit, we cannot say that it "arises out of the same transaction or occurrence" as Plaintiff's original claim.

Although, as the Equity Trust Claimants contend, this Court may indeed have diversity jurisdiction over Count IV, we may hear the claim only if it also arises out of the same transaction or occurrence as the original subject of this litigation. Fed. R. Civ. P. 13(g). Because this essential element is lacking in this instance, Defendant's Motion to Dismiss Count IV for lack of jurisdiction is hereby **GRANTED**.

### B. Defendant's Motion to Dismiss Under Rule 12(b)(6)

1. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) mandates that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This directive has not been interpreted to require "detailed factual allegations." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

(2009). It does require, however, a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to allow such an inference. Id. (citing Twombly, 550 U.S. at 555).

Where a plaintiff fails to state a claim upon which relief can be granted, or otherwise fails to meet the requirements of Rule 8(a)(2), Federal Rule of Civil Procedure 12(b)(6) permits a party to move the court to dismiss an action. The function of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Neitzke v. Williams, 409 U.S. 319, 326-27 (1989). The Fourth Circuit has held that a motion to dismiss under Rule 12(b)(6) should be granted only in "very limited circumstances." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989). However, dismissal is appropriate if it appears that the plaintiff is not "entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." Harrison v. United States Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988) (citation omitted); Davis v. Hudgins, 896 F. Supp. 561, 566 (E.D. Va. 1995) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). When reviewing the legal sufficiency of a complaint, the Court must construe the factual allegations "in the light most favorable to plaintiff." Schatz, 943 F.2d at 489 (quotation omitted); Davis, 896 F. Supp. at 566 (citing Martin Marietta Corp. v. Int'l Telecomm. Satellite Org., 991 F.2d 94, 97 (4th Cir. 1992)).

2. Discussion

In their Crossclaim, the Equity Trust Claimants have set forth in detail the factual allegations giving rise to their claims. (Equity Trust Claimants' Crossclaim ¶¶ 1-13.) In its

Motion to Dismiss, Defendant the Estate asserts that Virginia law governs the Crossclaim and that certain of the collective Defendants' claims are not cognizable under Virginia law. However, as we held in our prior Order, this choice of law analysis is premature. See North Am. Tech. Svcs., Inc. v. V.J. Techs. Inc., No. 10 CV 1384(AWT), 2011 WL 4538069, *2 (D. Conn. Sept. 29, 2011) ("Due to the complexity of this analysis when confronted with a choice of law issue at the motion to dismiss stage, courts . . . have concluded that it is more appropriate to address the issue at a later stage in the proceedings"); Clean Earth of Maryland, Inc. v. Total Safety, Inc., No. 2:10cv119, 2011 WL 1627995, *2 (N.D. W. Va. Apr. 28, 2011). At this phase of the proceedings, the only relevant inquiry is whether the collective Defendants have pled sufficient facts that would entitle them to relief. Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002). Construing the facts in favor of the Equity Trust Claimants, as we are bound to do on a Motion to Dismiss, we find that they have met this burden.

## II.    CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss Count IV is **GRANTED**, and Defendant's Motion to Dismiss Counts I, II, and III is **DENIED**. The Clerk is **DIRECTED** to transmit a copy of this Order to the all Counsel of Record.

**IT IS SO ORDERED.**

Norfolk, Virginia

November 2?2011

Robert G. Doumar
Senior United States District Judge